**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF ALABAMA**
**SOUTHERN DIVISION**

| | |
|---|---|
| **VANESSA COUCH AND KIMBERLY JAMES,** | ) |
| | ) |
| **Plaintiffs,** | ) |
| | ) Civil Action No.: _____ |
| **MOBILE COUNTY BOARD OF SCHOOL** | ) |
| **COMMISSIONERS; Board Members,** | ) **JURY DEMAND** |
| **DR. WILLIAM  FOSTER, SHERRY DILLIHAY-** | ) |
| **MCDADE, L. DOUGLAS HARWELL, JR.** | ) |
| **DON STRINGFELLOW, and** | ) |
| **DR. REGINALD CRENSHAW, in their official** | ) |
| **capacities only; CHRESAL THREADGILL, in his** | ) |
| **official capacity as Superintendent of Mobile** | ) |
| **County Public Schools;  and SEAN CLARK, in** | ) |
| **his  individual and official  capacities as** | ) |
| **Principal of  Murphy High School;** | ) |
| | ) |
| **Defendants.** | ) |

**COMPLAINT AND JURY DEMAND OF PLAINTIFFS**
**VANESSA COUCH AND KIMBERLY JAMES**

Plaintiffs Vanessa Couch (hereinafter "Couch") and Kimberly James (hereinafter

"James") bring this action against the Mobile County Board of School Commissioners,

(hereinafter "MCPSS") a governmental entity organized and existing in Mobile, Mobile County,

Alabama; Dr. William Foster, Sherry Dillihay-McDade, L. Douglas Harwell, Jr., Don

Stringfellow, and Dr. Reginald Crenshaw,  in their official capacity as Board Members of Mobile

County Public School System; Chresal Threadgill, in his official capacity as Superintendent of

Mobile County Public School System; and Sean Clark, in his individual and official capacities as

Principal of Murphy High School, (hereinafter "Clark"), for declaratory, equitable and injunctive

relief, and compensatory damages from Defendants arising from Defendants' violation of rights guaranteed to Plaintiffs under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §§2000e et seq, and the First and Fourteenth Amendments to the United States Constitution pursuant to 42 U.S.C. §§1983, 1981, and 1885.

## JURISDICTION

1.      The jurisdiction of this Court is invoked pursuant to 28 U.S.C. §§1331, 1343(4), 2201, 2202 and 42 U.S.C. Section 2000e et seq, and 42 U.S.C. Sections 1983 and 1981.

2.      Jurisdiction to grant injunctive and declaratory equitable relief as well as damages is invoked pursuant to 42 U.S.C. §2000e-5(f) and (g), 42 U.S.C. §1983 and 42 U.S.C. §1985(3).

## VENUE

3.      Venue is proper in the Southern District of Alabama, Southern Division, since Defendants conduct business within this District and Division and this is where acts of discrimination occurred.

## PARTIES

4.      Plaintiff Vanessa Couch, an African-American female, is over the age of nineteen years and a resident citizen of Mobile, Mobile County, Alabama.  At all times relevant to this action Couch was employed by the MCPSS.

5.      Plaintiff Kimberly James, an African-American female, is over the age of nineteen years and a resident citizen of Mobile, Mobile County, Alabama.  At all times relevant to this action James was employed by the MCPSS.

6.      Defendant Mobile County Board of School Commissioners is a governmental entity doing business in Mobile County, Alabama.  Defendant is engaged in an industry affecting

commerce and is a program receiving state and/or federal financial assistance.

7.     Defendants Dr. William Foster, Sherry Dillihay-McDade, L. Douglas Harwell, Jr., Don Stringfellow, and Dr. Reginald Crenshaw are Board Members of Mobile County Board of School Commissioners. (hereinafter "Board Members").   The Board Members are sued in their official capacity only to insure equitable and injunctive relief.

8.     Defendant Chresal Threadgill (hereinafter "Threadgill"), Superintendent of MCPSS, is sued in his official capacity only to insure equitable and injunctive relief.

9.     Defendant Sean Clark (hereinafter "Clark")  a white male, is the Principal of Murphy High School. Clark is sued in his individual and official capacities.

### EXHAUSTION OF ADMINISTRATIVE REMEDIES

10.     Prior to filing this civil action, Plaintiffs timely filed written charges asserting discrimination and retaliation with the Equal Employment Opportunity Commission.

11.     On December 13, 2021, the EEOC issued Couch a notice of Right to Sue.

12.     On December 6, 2021, the EEOC issued James a notice of Right to Sue.

13.     On February 25, 2022, the parties entered into a tolling agreement to extend the statute of limitations filing date and/or to waive any and all defenses regarding the same. The parties extended the tolling agreement and statute of limitations on March 30, 2022, and again on April 24, 2022.

14.     Plaintiffs have exhausted and satisfied all administrative remedies and pre-requisites to filing this action.

## FACTUAL ALLEGATIONS
### (Couch)

15.     Couch  was hired by MCPSS on or about November, 1994, as a Paraprofessional. Since 1994 she  held several office positions including Payroll Clerk, Bookkeeper, and Registrar. On August 2, 2017, Couch was promoted to the position of High School Principal Secretary.

16.     At all times relevant to this Complaint, Couch was assigned to Murphy High School and had tenure in her position as High School Principal Secretary.

17.     Couch satisfactorily performed her duties and always received good evaluations from her direct supervisors regarding her job performance.

18.     On or about December, 2020, Couch's Principal and direct supervisor, Mr. Joe Toomey, retired from MCPSS. In January, 2021, Mr. Sean Clark (Clark) was appointed as the new Principal at Murphy High School.

19.     Couch was treated differently by Clark, her Principal and direct Supervisor,  in the terms and conditions of her employment than non-minority employees including, but not limited to, training,  lack of communication, lack of support and assistance, job assignments and directives, leave and attendance.

20.     On July 19, 2021, Clark transferred Couch to another office and location where only African American clerks and administrators were assigned to work. Other African Americans, including Kimberly James, the school Counselor, were also relocated leaving the office where Clark was assigned to work to be assigned with only Caucasian employees.

21.     On July 26, 2021, Couch filed a formal Step I grievance and complaint of discrimination with Clark, her direct supervisor, related to Couch's reassignment and office location. Couch received no response and/or action by Clark and/or the Board as a result of her

4

grievance filing.    Couch was also identified and associated with the discrimination complaints of Fannie Brown and Yolanda Brundage.

22.    It is customary and the normal practice and procedure to address employee complaints with the supervisor prior to allowing a formal grievance to go forward to other administrators.

23.    Upon information and belief, Clark failed and/or refused to notify the Board and/or Human Resources of Couch's complaint in violation of policies and procedures established by the Board.

24.    On July 26, 2021, Couch was directed by Clark to perform the duties of both an Attendance Clerk  as well as the duties of the High School Principal Secretary. Couch was provided no assistance with answering calls, recording tardies, and/or registering students at Murphy High School. Couch was also required to continue with her normal High School Principal Secretary duties which included, but were not limited to, processing payroll, new hire enrollment, and personnel files.

25.    After Couch filed her formal complaint of discrimination on September 20, 2021, the harassment and hostility toward  her by Clark became more frequent, severe and pervasive including a substantial increase in her workload, hostility, isolation, lack of assistance and support in insuring work was performed, and the removal of duties associated with her classification as a High School Principal Secretary.

26.    The work scrutiny, failure to assist and/or support of Couch in the performance of her duties as both a High School Principal Secretary and Attendance Clerk duties, along with the other disparate treatment and hostile acts directed toward  her, was because of her race, African

American.

27.     Couch was required to perform the duties of two positions until Ms. Jennifer King (King), a black female approximately 36 years of age, was hired on September 16, 2021.  King was hired after Plaintiff Couch filed her EEO Complaints and Charge of Discrimination with the EEOC.

28,     Clark scrutinized Couch's job performance and failed to provide to Couch any assistance and/or support with her assigned duties which were typically performed by two people. This made Couch's ability to perform her assigned duties difficult and required her to stay after work to complete her assigned tasks.

29..     Clark's lack of resources and support to Couch created a hardship for Couch and created a hostile and discriminatory work environment.

30.     Couch was aware of other African Americans who were experiencing disparate treatment and hostile acts directed towards them by Clark including, but not limited to, Kimberly James, Kristi July, Yolanda Brundage and Fannie Brown.

31.     On August 4, 2021, Couch's position at Murphy High School as a High School Principal Secretary was posted on the school website.

32.     On August 4, 2021, Couch was, again, demoted by Clark and assigned to perform the duties of a Front Office Clerk; a substantial change in Couch's duties which required less responsibility, skill, and/or training of either an Attendance Clerk and/or High School Principal Secretary.  The duties assigned to Couch by Clark were customarily classified as an Attendance Clerk which was a position lower on the salary scale and tantamount to a demotion from the position of a High School Principal Secretary.

33..    On August 5, 2021, Couch's position at Murphy High School was posted on the Murphy High School website as a Clerk despite her formal classification as a High School Principal Assistant.

34.    On September 16, 2021,  King, a young black female, was appointed to the position of High School Principal Secretary. King had no experience as an executive secretary and was hired after she  filed her discrimination complaint with Clark.

35.    Couch was substantially more qualified than King to perform the duties of a High School Principal Secretary.

36.     Couch was not afforded any notice of the proposed demotion nor was Couch given an opportunity to defend herself regarding the demotion in violation of Board policies and procedures as well as State and Federal law.

37.    On September 20, 2021, Couch filed an EEOC Charge of Discrimination and provided to MCPSS and Clark notice of the same.

38.    On September 24, 2021, Clark confronted Couch in a hostile manner about her assignment of duties and chastised Couch regarding her inquiries and requests for clarification of her duties and responsibilities at Murphy High School. Clark advised Couch that she was assigned to perform only the duties of an Attendance Clerk and removed all duties assigned to Couch related to payroll, bookkeeping, and duties associated with backing up the Registrar.

39.    On September 29, 2021, Clark, again, modified Couch's work schedule and assigned her the duties of a front desk clerk and/or receptionist.  Clark, also,  directed Couch to adhere to a new schedule and work hours and  also advised Couch that she was no longer authorized to earn compensatory time off without his prior approval.

40.     Couch requested and was denied the ability to work a modified work schedule by Clark and hours she had customarily worked at Murphy High School for the past five years. Other employees requesting modifications and/or modified work hours were granted their requested changes.

41.     After Couch  filed her formal EEOC Charge of Discrimination, Clark increased scrutiny of Couch's work performance, her attendance and leave, and continued to harass and retaliate against Couch for filing complaints of discrimination. The constant harassment was offensive and created a hostile working environment.

42.     On October 11, 2021, Clark hired Shaquita Moore, an African-American female, to perform the duties of an Attendance Clerk.  Couch's duties as the Attendance Clerk were, thereafter, removed and Couch was assigned to perform the duties of a receptionist which was, again, a demotion in the class of duties in which Couch was required to perform.

43.     Couch remained classified as a High School Principal Secretary and her pay was not modified.  However, Couch's demotion and new assigned duties foreclosed Couch from further pay increases on the salary scale and/or promotional opportunities.

44.     The duties of a Front Office Clerk and/or Receptionist  required substantially less education, skill, and/or experience than the positions of High School Principal Secretary and/or Attendance Clerk and was tantamount to an additional demotion of Couch's employment.

45.     Couch's placement as an Attendance Clerk and Receptionist and/or Front Desk Clerk placed her in a job that was classified at a much lower salary on MCPSS salary schedule than a High School Principal Secretary.

46.     Couch's reassignment of duties and the removal of her High School Principal

8

Secretary Duties was the direct result of Couch's race, African American, and a direct result of and in retaliation for Couch's complaints of discrimination including, but not limited to, Couch's filing of a Charge of Discrimination with the EEOC.

47.    The hostility and isolation experienced by Couch at work became so severe and hostile that Couch was forced to resign her position effective May 1, 2022.

48.    Upon information and belief, Clark has discriminated against other African-Americans at  MCPSS and Clark has  engaged in a pattern and practice of discriminating against African Americans at Murphy High School in violation of federal law.

49.    Board was on notice that Clark had engaged in discriminatory and retaliatory conduct towards Couch and other African Americans.

50.    Couch was demoted and discriminated against by Clark and/or the Board as a direct result of her race, African American, and in retaliation for her complaints of discrimination in violation of Title VII of the Civil Rights Act of 1964.

51.    It was unusual for MCPSS and contrary to MCPSS custom or practice to initiate discipline and/or a demotion against an employee without notice and an opportunity to respond to allegations asserted against the employee.

52.     No action was taken by MCPSS to stop the harassment and/or retaliation of Couch by Clark.

53.     MCPSS failed and/or refused to investigate Couch's complaints of discrimination and/or to take any action to stop the harassment by Clark.

54.    Couch was demoted and harassed and retaliated against for filing complaints of discrimination and  harassment.

9

55.     Couch was subjected to a retaliatory hostile work environment as a result of her complaints of discrimination and retaliation, including her complaints to the EEOC, creating a retaliatory hostile working environment in violation of federal law.

56.     Other African-Americans have been similarly treated and discriminated against and harassed by Clark and MCPSS.

57.     Clark and MCPSS have engaged in a pattern and practice of discriminating against African Americans in violation of federal law.

58.     The actions of MCPSS have affected the terms and conditions of Couch's Employment with MCPSS and inhibited her ability to adequately perform her duties and responsibilities as a High School Principal Secretary.

59.     Defendant MCPSS and its decision makers, knew or should have known of the conduct of Clark described herein but failed to take the information seriously and/or provide the Couch an effective remedy to the conduct.

60.     The actions of Clark were ratified by MCPSS resulting in a hostile and retaliatory working environment in violation of Title VII of the Civil Rights Act of 1964.

61.     MCPSS had ineffective and inadequate policies and procedures for training its employees and managerial employees in a manner as to avoid the type of conduct alleged herein.

62.     The conduct alleged herein created an intolerable condition and work environment under which Couch worked or attempted to work.

63.     Couch was caused to suffer extreme mental anguish, loss of dignity, frustration, embarrassment, humiliation, anger, and other intangible injuries and other directly and indirectly related expenses as a direct result of the harassment and retaliation by MCPSS and Clark.

64.     Plaintiff has been forced to obtain legal services of the undersigned attorneys to enforce their rights under Title VII and is required to pay their attorneys reasonable attorneys' fees for the services rendered in this cause.

## FACTUAL ALLEGATIONS
### (James)

65.     James was hired by MCPSS in 2002 as a Special Education Teacher. She was later promoted and classified as a School Counselor and remains employed in said classification and position at all times relevant to this Complaint.

66.     James is certified by the State Department of Education to act as a School Counselor and to perform duties consistent with such assignment.

67.     At all times relevant to this Complaint, James was assigned to Murphy High School and had tenure in her position as School Counselor under the Students First Act.

68.     At all times relevant to this action, James satisfactorily performed her duties.

69.     James has consistently received good evaluations from supervisors regarding her job performance including, but not limited to, counseling responsibilities and duties.

70.     In January 2021, Clark was assigned to Murphy High School as the High School Principal and became James' direct supervisor.

71.     Clark treated James and other African-Americans at the school differently from Caucasion employees at Murphy High School in the terms and conditions of their employment including, but not limited to lack of communication, lack of support and assistance, job assignments and employee directives.

72.     Clark denied James the ability to perform the customary duties performed by a school counselor including, but not limited to, counseling and intervention services, school

11

testing, college and/or job fairs, and college application procedures. These duties have historically been performed by a school counselor.

73.     Clark excluded James from meetings and activities that, historically, counselors had been expected and were required to participate in and attend.

74.     On May 20, 2021, Clark moved James' office out of the "Counselor Suite", which was located in the main administrative building of the school, to an area in the back of the school campus. The relocation of James' office detrimentally affected James ability to perform her assigned duties as a 9th grade Counselor.

75.     James new office location detrimentally affected James' visibility and access to her assigned students. Not only were most of James' assigned students located outside of her new office building and facility, but the move interfered with James' ability to properly monitor and assist her assigned students.

76.     James' new office location caused students seeking counseling services from James much more difficult to obtain and less likely to occur.

77.     Clark's scrutiny and failure to provide to James assist and/or support in her position, along with the other disparate treatment and hostile acts directed towards James and other African American employees including Vanessa Couch, Kristi July, Brenda Horner, Yolanda Brundage, and Fannie Brown, raised concerns that James was being targeted because of her race, African American and being retaliated against for James' association with and/or personal complaints regarding discrimination in the workplace by Clark.

78.     On or about July, 2021, the adverse and discriminatory acts of Clark against James was brought to the attention of Human Resource Director, Bryan Hack, in regard to the mandatory

transfers of several African American employees at Murphy High School by Clark including, but not limited to, Kristy July, Fannie Brown (Brown), and Yolanda Brundage (Brundage). The transfers were rescinded by the Human Resource Department, but Brown and Brundage both filed formal complaints of discrimination regarding Clark's actions. James was identified as a witness for Brown and Brundage during this time frame.

79.     On or about August 5, 2021, Clark hired Emily Kennedy (hereinafter "Kennedy"), a white female, as a Drop Out Prevention Specialist. Kennedy was assigned to work in James' old office which was located in the Counselor Suite in the main administrative building. Kennedy's assignment to the counseling suite made the Counselor Suite an all white office.

80.     During the 2021-2022 school year, Clark, Principal, began to spend most of his time in the Counselor Suite. Clark performed most of his duties from the Counselor Suite office and was rarely seen in other areas of the campus.

81.     After Kennedy was hired by Clark as the Drop Out Prevention Specialist, Kennedy assumed and began to perform duties and responsibilities that had previously been assigned to James including, but not limited to,  assisting students and teachers with issues regarding student placement, student grades, student schedules, ACT testing, job and/or college fairs, and intervention and counseling of James' assigned 9th grade students.

82.     Kennedy was assigned duties at Murphy which are customarily and historically performed by a certified High School Counselor.

83.     On August 5, 2021,  Clark verbally reprimanded James for removing her assigned chair out of the counseling suite and taking it to her new office. James questioned the reprimand by Clark including the fact that it was issued in front of other staff members. Clark then noted that he

had "received calls" from "outside the office" about James' move out of the counseling suite.

84.     The verbal reprimand of James by Clark was and intended to deter James from issuing any complaints of discrimination and/or further participation in investigations and/or other EEO complaints asserted by other African-American staff members at the school.

85.     On August 27, 2021, James was assigned the task of administering the PSAT testing at Murphy High School. However, James was denied proper access codes and testing authority to obtain information necessary to properly administer the test. In addition, James was provided inaccurate information regarding the PSAT scheduled test date.

86.     Clark failed and/or refused to provide James with the proper administrative support and/or authority to perform the assigned PSAT testing duties. The denial of access codes to the test site, the lack of support, and the inaccurate information provided to James made the performance of James' duties related to the administration of the PSAT test much more difficult and time consuming to perform.

87.     James was able to properly administer the test only on the correct scheduled date only with assistance and help and assistance from PSAT Testing Site officials and teaching staff at the school.

88.     Clark's denial of testing access, accurate information, and administrative support to James necessary to administer the PSAT test was intentional and was intended to result in James' failure of the assigned task.

89.     On October 13, 2021, Clark assigned James to conduct counseling lessons for the 9th grade students. The other Counselors at the school, who are both white, are not required to perform counseling lessons and/or to conduct classes with students.

14

90.     During the 2021-2022 school term, James was rarely requested or allowed to assist any of James' assigned students with counseling.

91.     Kennedy, a white female, who was the Drop Out Specialist at Murphy High School, was assigned and did perform counseling of 9th grade students assigned to James.

92.     Kennedy is neither certified nor qualified to perform high school counseling duties.

93.     James is substantially more qualified than Kennedy to perform the duties and responsibilities of a 9th grade counselor including, but not limited to, student counseling, crises and suicide intervention services.

94.     James reassignment of duties and discharge and/or demotion are the direct result of James' race, African American and her complaints and participation in investigations of discrimination against Clark..

95.     The change in James' assigned duties and responsibilities by Clark created a substantial decrease in James' duties requiring less education, training, experience, and skill and experience and was tantamount to a demotion and/or discharge as a School Counselor.

96.     On or about November 8, 2021, James filed an EEOC Charge of Discrimination.

97.     After filing her EEOC Charge of Discrimination, the work scrutiny, denial of access and support necessary to perform her duties, and isolation at work became more frequent and severe and interfered with James ability to properly perform her duties and was retaliatory.  James was also excluded from information customarily and historically provided to counselors and was removed from performing additional duties she customarily performed related to graduation and other student events.

98.     The lack of resources, lack of communication, isolation, and lack of support from

Clark was a hardship for James and created a hostile work environment.

99.     James was subjected to discrimination and a hostile work environment which is continuing.

100.    Clark has discriminated against other African-Americans and Clark has engaged in a pattern and practice of discriminating against African Americans at Murphy High School in violation of federal law.

101.    James and other African Americans were demoted and discriminated against by Clark and/or the Board as a direct result of their race, African American, and in retaliation for their complaints of discrimination in violation of Title VII of the Civil Rights Act of 1964.

102.    James was subjected to a hostile work environment as a result of her race, African-American, in violation of the Civil Rights Act of 1964, as amended.

103.    No action was taken by MCPSS to stop the harassment of James and others or to create an environment that was not hostile and/or discriminatory despite notice of the same.

104.    MCPSS ratified the unlawful conduct of Clark by failing to take appropriate and corrective action after having received notice thereof.

105.    MCPSS and Clark have engaged in a pattern and practice of discrimination and racial harassment against African American employees.

106.    As a proximate consequence of the actions of Defendants, James was caused to suffer damages including, but not limited to, distress, anxiety, frustration, and embarrassment.

107.    Plaintiff has been forced to obtain legal services of the undersigned attorneys to enforce her rights under Title VII and is required to pay her attorney reasonable attorneys' fees for the services rendered in this cause.

**COUNT I**
**Disparate Treatment in Violation of Title VII, and 42 U.S.C. Section 1983 and 1981**
**Constructive Demotion and/or Discharge**
**MCPSS, Board Members, Threadgill, in his official capacity only,**
**and Clark in his individual and official capacities**

108.    Plaintiffs assert this claim against Defendants, MCPSS, Board Members, Threadgill, in his official capacity only, and Clark, in his individual and   official capacities as Principal of Murphy High School.

109.    Plaintiff avers and incorporates herein each of the foregoing paragraphs as if full set forth herein.

110.     As a direct result of Plaintiffs' race, African American, and complaints of discrimiantion, Defendants retaliated against Plaintiffs for their open opposition and expression of concerns regarding possible discriminatory practices by Defendants.

111.    As a direct result of Plaintiffs' race,  African-American and complaints, Defendants restructured Plaintiffs' job duties and assignments and removed critical assignments from and duties requiring substantially less education, skill and responsibility.

112.    Plaintiffs have been caused to suffer loss of employment, underemployment, and a loss of standing and reputation in the community.

113.    The adverse actions taken by Defendants was hostile and retaliatory and was tantamount to a demotion.

114.    Defendants retaliated against Plaintiffs for their exercise of federally protected rights in violation of the ADA by instituting and conducting a systematic pattern and practice of discrimination and retaliation in an effort to create a hostile working environment and resulting in Plaintiff's forced reassignment and/or demotion.

17

115.    As the direct and proximate result of Defendants' wrongful actions, Plaintiffs were caused to suffer loss of employment, underemployment, loss of income, mental anguish, frustration, anxiety, loss of dignity, embarrassment, humiliation, and other intangible injuries and other directly and indirectly related expenses.

116.    These injuries are continuing for Plaintiffs and they will continue to suffer such injuries in the future.

117.    Plaintiffs have been forced to obtain legal services of the undersigned attorneys to enforce his rights under the law and is required to pay their attorneys reasonable attorneys' fees for the services rendered in this cause.

**COUNT II**
**Disparate Treatment in Violation of Title VII and 1981**
**MCPSS, Board Members, Threadgill, in his official capacity only,**
**and Clark in his individual and official Capacities**

118.    Plaintiffs Couch and James aver and incorporate herein each of the foregoing paragraphs as if full set forth herein.

119.    Plaintiffs Couch and James assert this claim against Defendants MCPSS, Board Members, Threadgill, in his official capacity as Superintendent, and Clark in his individual and official capacities as Principal of Murphy High school..

120.    Plaintiffs Couch and James were subjected to disparate treatment on the basis of their race in violation of Title VII and 42 U.S.C. Sections 1981 and 1983.  Such discriminatory treatment included discipline, job assignments, lack of assistance, heightened scrutiny, disparate application of work rules and policies, and other terms and conditions of their employment.

121.    Plaintiffs Couch and James were treated differently on the basis of their race, African

18

American, than similarly situated individuals. Defendants have no legitimate non-discriminatory reason for its conduct and any such reason is pretext for discrimination.

122.    Defendants have engaged in a pattern and practice of discrimination and disparate treatment.

123.    Defendants' actions were willful, with malice and with reckless disregard for Plaintiffs' rights.

124.    Defendants failed to make good faith efforts to comply with Federal Law.

125.    Defendants retaliated against Plaintiffs for their exercise of federally protected rights in violation of the Title VII and the Civil Rights Act of 1991, by instituting and conducting a systematic pattern and practice of discrimination and retaliation in an effort to create a hostile working environment.

126.    As the direct and proximate result of Department's wrongful actions, Plaintiffs Couch and James were caused to suffer mental anguish, loss of dignity, embarrassment, humiliation, and other intangible injuries and other directly and indirectly related expenses.  These injuries are continuing and Plaintiffs will continue to suffer such injuries in the future.

127.    Plaintiff has been forced to obtain legal services of the undersigned attorneys to enforce their rights under Title VII and is required to pay their attorneys reasonable attorneys' fees for the services rendered in this cause.

### COUNT III - Retaliation
### Title VII and 42 U.S.C. Section 1983 claims of Couch Only
### MCPSS, Board Members and Clark in his individual and official capacities

128.    Plaintiffs aver and incorporate herein each of the foregoing paragraphs as if fully set forth herein.

129.    Plaintiffs James and Couch assert this claim against Defendants MCPSS, Board Members, Threadgill, in his official capacity, and Clark in his individual and official capacities as Principal of Murphy High School.

130.    Plaintiffs reasonably participated in and were associated with investigations by MCPSS concerning unemployment practices they reasonably believed to be discriminatory.

131.    In violation of 42 U.S.C. §1983, Defendants discriminated and retaliated against Plaintiff because Plaintiff he reported discriminatory conduct and opposed discriminatory practices made unlawful under Federal Law.

132.    The actions and conduct of Plaintiff in reporting discrimination in the workplace was a matter of public concern.

133.    Defendants retaliated against Plaintiffs for their protected conduct including, but not limited to, constructively demoting Plaintiffs and  reassigning Plaintiffs' duties, unfair evaluations, frivolous reprimands, scrutiny of their work, isolation from other employees, and denial of employment opportunities in retaliation for their legitimate exercise of their rights to free speech and free association as described above.

134.    The Plaintiffs' opposition or participation in these matters was a motivating factor in MCPSS and Clark's decision to treat Plaintiffs in a hostile manner and to take adverse actions against them in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. Section 2000e-3(a) and 43 U.S.C. Section 1983.

135.    Plaintiffs provided a formal notice of oral and written complaints of discrimination and retaliation against their supervisor, Clark with MCPSS in accordance with policies regarding the same.

136.     Plaintiffs also filed charges with Equal Employment Opportunity Commission (EEOC) asserting claims against MCPSS for discrimination and retaliation.

137.     After Plaintiffs complained of discriminatory conduct with Defendant MCPSS and its agent, Clark, Plaintiffs were treated in an adverse manner including, but not limited to, treating them in a hostile manner, denying resources and training, increased scrutiny, poor evaluations, disciplinary action, isolation, and hostility, and the removal of essential duties in their positions.

138.     After the receipt of each of Plaintiff Couch's complaints of Discrimination, Couch was systematically removed of essential duties and reassigned duties in a position on a much lower salary scale and class of duties than a High School Principal. The new duties required substantially less education, training, skill, and experience than that of a High School Principal Secretary and was tantamount to a demotion.

139.     The removal of duties was intentional and in retaliation for James and Couch's complaints of discrimination.

140.     Defendants deprived Plaintiff of his freedom of speech and of association as guaranteed by the First Amendment of the United States Constitution and the Civil Rights Act, and enforced through 42 U.S.C. § 1983.

141.     Plaintiffs opposition to discriminatory conduct was a direct cause of the adverse actions that were initiated against Couch and James and was both unwarranted and pretext for discrimination and/or retaliation.

142.     Defendants have engaged a pattern and practice of discriminatory and retaliatory conduct against Plaintiffs and other similarly situated.

143.     As a result of Defendant's conduct, Plaintiffs have suffered frustration, anxiety, anger,

and emotional distress and other compensatory damages.

144.    Defendants' actions were willful, with malice and with reckless disregard for Plaintiff's rights.

145.    Defendants' conduct was done with reckless indifference to the Plaintiffs' federally protected rights.

146.    Defendants failed to make good faith efforts to comply with Federal law.

147.    In their actions towards Plaintiffs as described above, Defendants acted willfully, intentionally, and/or  with callous or reckless indifference to Plaintiff's federally protected rights.

148.    Reasonable public officials knew or should have known that their actions violated clearly established law.

149.     Plaintiffs have been forced to obtain legal services of the undersigned attorneys to enforce their rights under Title VII and are required to pay their attorneys reasonable attorneys' fees for the services rendered in this cause.

### COUNT IV - Retaliatory Hostile Work Environment in Violation of Title VII
### Title VII and 42 U.S.C. Section 1983 of Couch and James
### MCPSS and Clark in his individual and official capacities

150.    Plaintiffs aver and incorporate herein each of the foregoing paragraphs as if full set forth herein.

151.    Plaintiffs Couch and James assert this claim against Defendants, MCPSS, Board Members, Threadgill, in his official capacity at Superintendent, and Clark, in his individual and official capacities as Principal of Murphy High School.

152.    Plaintiffs were subjected to a retaliatory and hostile, offensive, and abusive working environment as a result of their complaints of discrimination.

153.     Based upon the pervasive nature of the hostile environment, Defendants knew or

22

should have known of the hostile work environment.

154.    Plaintiffs found the harassment to be humiliating, offensive, unfair and in violation of their rights under Federal law.

155.    Defendant MCPSS received information regarding the retaliatory and hostile working environment and failed to take prompt, effective, remedial action upon notice of a hostile working environment.

156.    Plaintiffs James and Couch suffered compensatory damages as a result of the harassment.

157.    Plaintiffs have suffered frustration, anxiety, humiliation and emotional distress as a result of the harassment.

158.    Defendants knew or should have known that their conduct violated clearly established Federal law.

159.    As a result of Defendant's conduct, Plaintiffs have suffered frustration, anxiety, anger, and emotional distress and other compensatory damages.

160.    Defendants' actions were willful, with malice and with reckless disregard for Plaintiff's rights.

161.    Defendants' conduct was done with reckless indifference to the Plaintiffs' federally protected rights.

162.    Defendants failed to make good faith efforts to comply with Federal law.

163.    Plaintiffs have been forced to obtain legal services of the undersigned attorneys to enforce their rights under Title VII and are required to pay their attorneys reasonable attorneys' fees for the services rendered in this cause.

**COUNT V - Hostile Work Environment**
**Title VII and 42 U.S.C. Section 1983**
**MCPSS, Board Members, Threadgill, in his official capacity, and Clark in his individual**
**and official capacities as Principal of Murphy High School**

164.     Plaintiffs Couch and James assert this claim against Defendants, MCPSS, Board

Members, Threadgill, in his official capacity as Superintendent, and Clark in his individual and

official capacities as Principal of Murphy High School.

165.     Plaintiffs aver and incorporate herein each of the foregoing paragraphs as if fully

set forth herein.

166.     Plaintiffs were subjected to a hostile, offensive, and abusive working environment

as a result of their race, African-American.

167.      Based upon the pervasive nature of the hostile environment, Defendants MCPSS

knew or should have known of the hostile work environment.

168.     Plaintiffs found the harassment to be humiliating, offensive, unfair and in

violation of their federal rights.

169.     Defendant MCPSS received information regarding the discriminatory and hostile

working environment and failed to take prompt, effective, remedial action upon notice of a

hostile working environment.

170.     Plaintiffs have suffered compensatory damages as a result of the harassment.

171.     Plaintiffs have suffered frustration, anxiety, humiliation and emotional distress as

a result of the harassment.

172.     Defendants knew or should have known that their conduct violated clearly

established Federal law.

173.     Defendant's actions were willful, with malice and with reckless disregard for

Plaintiff's rights.

174.   The Defendants' conduct was done with reckless indifference to the Plaintiff's federally protected rights and Defendants failed to make good faith efforts to comply with federal law.

175.   Plaintiffs have been forced to obtain legal services of the undersigned attorneys to enforce their rights under Title VII and are required to pay their attorneys reasonable attorneys' fees for the services rendered in this cause.

**COUNT VI**
**CONSTRUCTIVE DISCHARGE (Couch Only)**
**Title VII and 42 U.S.C. Section 1983**
**MCPSS, Board Members, and Clark**

176.   Plaintiff Couch avers and incorporates herein by reference the forgoing paragraphs.

177.   Plaintiff Couch was discriminated against by MCPSS and her principal, Clark.

178.   The discrimination and hostility and isolation that Couch was forced to endure was severe and pervasive and was implement by Clark and MCPSS to the point where no reasonable person in Couch's position could not have remained employed in her position.

179.   Because of the discrimination and retaliation asserted by Clark against Couch, and because MCPSS failed and/or refused to stop the unlawful conduct after receiving notice, Couch felt compelled to resign and submitted her resignation effective May 1, 2022.

180.   Plaintiff Couch was caused to suffer lost wages and other compensatory damages including depression, frustration, humiliation, and other emotional distress.

181.   Plaintiffs have been forced to obtain legal services of the undersigned attorneys to enforce their rights under Title VII and are required to pay their attorneys reasonable attorneys'

fees for the services rendered in this cause.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs respectfully pray that this Court assume jurisdiction of this action and after trial:

A.     Grant Plaintiffs a declaratory judgment that the actions, policies and practices complained of herein of the defendants violate Plaintiffs' federally protected rights as set forth herein.

B.     Grant Plaintiffs a preliminary injunction enjoining the defendants, their agents, successors, employees and attorneys and those acting in concert with them and at their direction, from maintaining or continuing the policies, practices, customs and usages of denying, abridging, withholding, conditioning, limiting, or otherwise interfering with the Plaintiffs' rights as set forth herein.

C.     Grant Plaintiffs an order enjoining the defendants, their agents, successors, employees, and attorneys and those acting in concert with them and at their discretion, from engaging in practices that discriminate against Plaintiffs and/or other African Americans and enjoining defendants from failing and refusing to immediately restore Plaintiffs' employment status and classification.

D.     Grant Plaintiffs any lost wages from Defendant MCPSS in the amount Plaintiffs would have earned but for those policies and practices complained herein.

F.     Award compensatory damages against all defendants in an amount the jury determines will compensate the Plaintiffs for their losses and damages and/or nominal damages as may be appropriate.

G.      Award Plaintiffs' costs and expenses in prosecuting this action including an award of reasonable attorneys' fees.

H.      Retain jurisdiction of this action following judgment for sufficient time to insure that Defendants comply with the law and decree which may be entered herein, and during such time to require Defendants to report such information as is necessary to evaluate their compliance.

I.      Grant Plaintiffs such other and further relief as equity and justice requires.

## PLAINTIFFS REQUEST A TRIAL BY JURY.

Respectfully submitted this 16th day of May, 2022.

> */s/ Mary E. Pilcher*
> Mary E. Pilcher, Esq. (PIL008)
> Stein & Pilcher, LLC
> 151 North Bancroft Street
> P.O. Box 602
> Fairhope, AL 36533
> 251-210-4557

**Courtesy Copy provided to the following:**

Bryan Hack, Esq.
Director of Human Resources
Mobile County Board of School Commissioners
bhack@mcpss.com