IN THE UNITED STATES DISCTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| VANESSA COUCH AND KIMBERLY JAMES, )<br>)<br>    Plaintiffs, )<br>)<br>  v. )<br>)<br>MOBILE COUNTY BOARD OF )<br>SCHOOL COMMISSIONERS, )<br>et al. )<br>)<br>    Defendants. ) | Case No. 1:22-CV-00195-N |

### REPORT OF PARTIES' PLANNING MEETING

Pursuant to Fed.R.Civ.P. 26(f), a meeting was held on August 15, 2022, and was attended by:

Mary E. Pilcher – attorney for Plaintiffs Vanessa Couch and Kimberly James

K. Paul Carbo, Jr. – attorney for Defendants Board of School Commissioners of Mobile County; Dr. William Foster, Sherry Dillihay-McDade, L. Douglas Harwell, Jr., Don Stringfellow, Dr. Reginald Crenshaw and Chresal Threadgill, all in their official capacities.

John W. Marsh – attorney for Defendant Sean Clark

The parties **do not request** a conference with the Court before entry of the scheduling order.

1. **Plaintiff's Brief Narrative Statement**:

   a. The Plaintiff, Vanessa Couch (hereinafter "Couch"), worked with the Mobile County Board of School Commissioners (Board) and was assigned to Murphy High School in Mobile, Alabama. Couch was an Administrative Secretary and had worked in that position since 2017.

    Couch satisfactorily performed her job duties at all times relevant to this litigation and had a history of a satisfactory performance during her employment with the Board.

b. On or about January, 2021, Defendant Sean Clark (hereinafter "Clark") was assigned to Murphy High School as the school Principal. After Clark's assignment as the school Principal, Couch and other African American employees at the school were treated differently from non-minority employees in the terms and conditions of their employment including in areas of communication, support, job assignments, and employee directives. In addition, Clark slowly and systematically began to reduce the job duties and assignments which were customarily assigned to the Plaintiff's job duties and position in her classification. In addition, Couch was excluded from meetings and information necessary to perform her assigned job duties properly.

c. On or about May, 2021, Clark reassigned Couch to another office and reassigned to her duties and responsibilities that were different than customarily performed in her classification. The move to another office and/or location not only impaired her ability to properly perform her duties as Administrative Secretary, but, also, isolated her from others with whom she customarily was required to interact with on a daily basis.

d. On or about July, 2021, the adverse and discriminatory acts of Clark against Couch and several other employees was brought to the attention of the Human Resource Director, Bryan Hack, as part of discrimination claims asserted by Fannie Brown and Yolanda Brundage in defense of a proposed mandatory transfer by Clark to oust them from Murphy High School. Eventually, however, Couch brought forth her own discrimination and retaliation claims against Clark when she suffered adverse actions after notice of her association with Brown and Brundage, as well as confirmation of her own concerns of discrimination to Human Resource Director, Bryan Hack.

e. In August, 2021, Couch was removed from her duties as an Administrative Secretary and assigned to perform the duties of an Attendance Clerk. When Couch, again, asserted that the demotion was discriminatory and retaliatory for her association with Brown and Brundage, she was again demoted and assigned the duties of a Receptionist. Although Couch's pay was not modified, the removal of critical and skilled duties which she had customarily performed under her classification was stigmatizing, demoralizing, and discriminatory.

f. The notice to the Board by Couch (as well as Brundage, Brown and others) regarding the discriminatory actions of Clark was ignored, and the Board failed and/or refused to take any corrective action to prevent future

2

      discriminatory actions and wrongdoing by Clark.   In essence, the Board's blind eye to Clark's discrimination empowered Clark and he continued his campaign of harassment and discrimination by slowly removing the job duties of Couch, isolating her from other staff members, and causing her embarrassment and humiliation as others watched the duties slowly dwindle to menial tasks and duties.   The change in her functions was hostile and resulted in duties that required less time, less skill, less education and training, and was degrading to Ms. Couch.   The hostility and isolation experienced by Couch at work became so severe that she was forced to resign her position effective May 1, 2022.

g. Board all engaged in a pattern and practice of discrimination, hostile work environment, and retaliation towards Ms. Couch. The hostile and discriminatory treatment and conduct of the Defendants violated the federal rights of Ms. Couch and violated federal law.

### **Defendant School Board's Brief Narrative Statement**:

Vanessa Couch:
The Board denies that any employee of the Board discriminated against Ms. Couch or treated her differently than non-minority employees. The new principal, Sean Clark, made changes and adjustments to personnel based upon is opinion of where various personnel could best help with carrying out the purposes and functions of the Board, none of the changes or adjustments were made based upon discriminatory motives and all were based upon reasonable and legitimate business reasons. Ms. Couch never informed the Board of any perceived discriminatory treatment, never filed any complaint or grievance other than her EEOC charge and never availed herself of the processes and procedures in place to investigate and address discriminatory treatment. Couch never lost any wages or benefits and was assigned job duties and functions commensurate with her job title and qualifications.


Kimberly James
The Board denies than any employee of the Board discriminated against Ms. James. All actions alleged to have occurred by Ms. James were taken for legitimate, nondiscriminatory reasons. Ms. James never complained or filed a grievance with the Board or utilized the Board's procedure for reporting alleged discrimination. Ms. James never lost any wages or benefits and suffered no adverse employment action.

## **Defendant Sean Clark's Brief Narrative Statement:**

Each Plaintiff contends that she was subjected to unlawful racial discrimination in employment, hostile work environment based on race and unlawful retaliation for engaging in protected activity. Defendant Principal Sean Clark ("Principal Clark") vehemently disputes those allegations. At all times pertinent, Principal Clark observed Board policies and procedures that prohibit discriminatory and retaliatory employment practices and treated employees and staff (including Plaintiffs) equitably and without regard to race. The employment actions and decisions that are the subject of the lawsuit were based on legitimate non-discriminatory and nonretaliatory reasons and were taken to best serve the needs of Murphy High School's student population and to most efficiently utilize the personnel resources under Principal Clark's supervision.

Plaintiff(s) will be unable (1) to establish a *prima facie* case of unlawful discrimination or retaliation; (2) to establish pretext; (3) to establish that she sustained a loss of pay or other monetary damages; (4) to establish that she experienced an actionable adverse employment action; (5) to establish that any speech cited as the basis of a retaliation claim implicated a matter of public concern; (6) to establish that she experienced retaliation or any adverse employment action as a result of engaging in constitutionally or statutorily protected activity; (8) to establish that she was employed in a hostile work environment; or (9) to establish that she experienced discrimination, retaliation, or other adverse employment action as a result of the implementation of any unlawful Board policy.

4

The foregoing statement represents a summary of Principal Clark's position regarding Plaintiffs' principal claims. Defendant's position is set forth more fully in his answer to Plaintiffs' Complaint. The more abbreviated statement set forth above does not constitute a waiver or abandonment of any defense or contention not expressly asserted or addressed above.

2. This **jury** action should be ready for trial by **November 2023** and at this time is expected to take approximately __3  days__, exclusive of jury selection.

   The parties request that the jury be drawn from the Southern Division only.

3. The parties request a pretrial conference in **October 2023**.

4. Discovery Plan.  The parties jointly propose to the Court the following discovery plan:

a. The parties jointly propose to the court the following discovery plan: Discovery will be needed on the following subjects: **All issues raised in Plaintiff's Complaint and Answer.**

b. All discovery commenced in time to be completed by July 26, 2023

5. Initial Disclosures.  The parties will exchange by September 6, 2022 the information required by Fed.R.Civ.P. 26(a)(1).

6. The parties request until January 2, 2023 to join additional parties and amend the pleadings.

**7.** Reports from retained experts under Rule 26(a)(2) due:
from Plaintiff(s) by March 16, 2023**.**
from Defendant(s) by April 16, 2023**.**

8. Pretrial Disclosures.  Final lists of witnesses and exhibits under Rule 26(a)(3) due by **1 month prior to the pretrial conference.**

9. Discovery Limits.

    Maximum of **30** interrogatories by each party to any other party.
    Responses due **30** days after service.
    Maximum of **7** depositions by plaintiff(s) and **7** by defendant(s).
    Each deposition limited to maximum of **7** hours unless extended by agreement of parties.
    Maximum of **30** requests for admission by each party to any other party. Responses due **30** days after service.
    Maximum of **30** requests for production of documents by each party to any other party.   Responses due **30** days after service.

10.  All potentially dispositive motions filed by August 23, 2023.

11.  Settlement.  **Cannot be evaluated prior to close of discovery.**

12. The discovery in this action will include Electronically Stored Information (ESI).   Disclosure of discovered electronically stored information should be handled as follows:

    The parties, at this point, do not anticipate discovery of electronically stored information other than pertinent e-mails, personnel records, and/or electronically stored or transmitted correspondence.  The parties stipulate that with respect to any electronically stored information as identified or requested during the course of discovery, such documents, to the extent reasonably accessible or otherwise not objectionable, will be produced either as a hard copy on paper, or stored on a CD or DVD in their native format or in .pdf file.  The parties further agree that they will submit electronically stored information a form useful by the other party.  For instance, if data is stored in specialized software programs, the party retaining such information agrees to make available to the other parties the necessary software or program to review the data.  If this is not reasonably possible, the party retaining such information agrees to convert the information into a format which the other party can use or to reproduce the information to paper form.  If no such means are available, the parties agree to allow the opposing party to access information at a pre-arranged time and place.  The parties anticipate a need to preserve such electronically stored information as set out above.

    The parties agree that, with respect to any inadvertently-produced documents which are subsequently designated or claimed to be privileged

or subject to other protections from non-disclosure, the documents shall be returned immediately to the producing party upon written request for such return, which shall be made promptly after discovery of the inadvertent production. Upon written request of the non-producing party challenging the designation of the document as privileged or otherwise protected from non-disclosure, the parties shall meet and confer a t a mutually convenient time in an effort to resolve the dispute. If this effort to resolve the dispute is unsuccessful, the non-producing party may challenge the designation by a motion filed with the Court.

13. **Other matters.**
The parties propose that a 3-day written notice be served on all parties prior to the issuance of a non-party subpoena.

The parties agree and consent to service by electronic means.

Date: August 15, 2022

| | |
|---|---|
| **Mary E. Pilcher** | **K. Paul Carbo, Jr.** |
| **STEIN & PILCHER, LLC** | **THE ATCHISON FIRM, P.C.** |
| **Attorney for Plaintiff** | **Attorney for Defendant –Board of School Commissiners** |
| P.O. Box 602 | 411 Azalea Rd |
| Fairhope, Alabama 36533 | Mobile, Alabama 36609 |
| Phone: (251) 210-4557 | Phone: (251) 665-7200 |
| By: /s/ Mary E. Pilcher | By: /s/ K. Paul Carbo, Jr. |
| Mary E. Pilcher (PIL008) | K. Paul Carbo, Jr. (CARBK8014) |
| By CONSENT | |
| **John W. Marsh** | |
| **BALL, BALL, MATTHEWS & NOVAK, P.A**. | |
| **Attorney for Defendant Sean Clark** | |
| P.O. Drawer 2148 | |
| Montgomery, Alabama 36102-2148 | |
| By: /s/ John W. Marsh | |
| John W. Marsh (MAR173) | |
| By CONSENT | |

## **CERTIFICATE OF CONSENT**

      By my signature below, I certify that Counsel for Plaintiff, Mary E. Pilcher and Counsel for Defendant Sean Clark, John W. Marsh in this document and have consented to my e-filing it on behalf of all parties with their electronic signatures affixed, on this the 15 day of August, 2022.

/s/ K. Paul Carbo, Jr.
K. Paul Carbo, Jr.
